UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID COLE,

    Defendant.

CASE NO. 3:23-cv-05935-BHS

ORDER

This matter is before the Court on the United States' Petition to Enforce the United States Coast Guard's (USCG's) administrative subpoenas, Dkt. 1, and on Defendant David Cole's motion to quash the subpoenas.[1] Dkt. 10.

On the morning of July 28, 2022, Cole was the piloting the Washington State Ferry *Cathlamet* when it struck a bundle of wooden pilings known as a "dolphin" protecting the Fauntleroy ferry terminal and ran aground. The *Cathlamet* carried 65

---

[1] USCG issued two subpoenas. In response to Cole's Answer and motion to quash, Dkt. 10, USCG withdrew its first subpoena. Dkt. 11 at 1 n.1. Only the second subpoena is at issue.

ORDER - 1

vehicles and 75 passengers, but no one was injured. The accident caused some $10,000,000 in damage.

USCG's initial investigation led it to believe that Cole may have fallen asleep. USCG subpoenaed Cole's medical records for the six years preceding the accident. It seeks to determine whether an underlying medical condition, such as sleep apnea, may have contributed to the allision and whether it needs to amend its merchant mariner credentialing process. Dkt. 11 at 4.

Cole seeks to quash the subpoena. He asserts that USCG already has 31 years' worth of relevant medical information from his annual physicals and five-year certifications for his pilot's license. He argues the subpoena is so overbroad and unduly burdensome that it violates his Fourth Amendment rights.

Because the Court concludes the subpoena is reasonable as to the content and the time frame, the Government's motion to enforce the subpoena is **GRANTED**, and Cole's motion to quash it is **DENIED**.

### I. BACKGROUND

Cole was master and pilot of the Washington State ferry *Cathlamet* when it struck the dolphin and ran aground. USCG immediately investigated. Only Cole and the pilot he relieved before approaching the terminal, William Larson, were present on the *Cathlamet's* bridge at the time. Dkt. 1 at 4. USCG investigators interviewed Cole and other witnesses on the day of the accident. Dkt. 2 at 3. Cole asserted that the *Cathlamet* was going "at the most" five knots prior to hitting the dolphin. Dkt. 1 at 5. Larson also estimated that it was traveling at five knots. *Id*. But the investigation concluded the ferry

was traveling at 17 knots at the time of the allision. *Id*. Cole told investigators the vessel was on the wrong side of the dolphin, suggesting that it was off course. *Id*. Cole and the rest of the crew tested negative for drugs or alcohol. Dkt. 2 at 7. In an August 2022 interview, Larson asserted Cole must have "dozed off" while piloting the vessel and that Cole "seemed tired." Dkt. 1 at 5.

Two days after the accident, Cole offered to voluntarily surrender his Merchant Mariner Credentials (MMC) pursuant to 46 C.F.R. § 5.203. Dkt. 1 at 5. USCG ultimately accepted his surrender in October 2022, though its investigation continued. *Id*.

In August 2022, USCG requested and received from the National Center of Excellence a copy of the physicals required for Cole's MMC. Dkt. 1 at 8. During every credential renewal for a First-Class Pilot endorsement, a physician ensures that the "mariner meets the criteria of 46 C.F.R. § 10.301 and is free from any medical condition likely to be aggravated by service at sea or to render the seafarer unfit for such service or to endanger the health of other persons on board." Dkt. 2 at 2. The First-Class Pilot endorsement lasts five years. It must be renewed with a new physical. Merchant mariners also undergo annual medical screening. *Id*. USCG obtained all of Cole's physical examinations since 1991. Dkt. 2 at 6.

USCG became concerned when it learned that for the last ten years all but one of Cole's merchant mariner credential renewal applications took place at a single urgent care facility. Dkt. 2 at 6–7. This "raised the question" of whether Cole, like some other merchant mariners, used "multiple physicians in order to avoid detecting medical

conditions that would preclude the issuance of a credential being identified during renewal and pilot physicals." *Id*. at 7.

In response to USCG's request for Cole's records, the urgent care facility provided only the records required to maintain Cole's merchant mariner credentials. *Id*. USCG sought to determine whether Cole had an underlying medical condition, such as sleep apnea, that may have impacted his ability to perform his duties, and which may not have been properly evaluated by the physician purporting to affirm Cole's capacity to hold an MMC. Dkt. 2 at 6. To do so USCG issued two subpoenas. The first, issued in January 2023, sought the names and contact information of all Cole's health care providers for the six years and seven months preceding the allision. Dkt. 2-5. Cole responded through counsel in January that he would not comply with the subpoena, partly on Fifth Amendment grounds. Dkt. 1 at 6.

In April 2023, USCG issued a second subpoena, seeking

> all medical records and records related to first-class pilot physical exams from your primary care physician, specialists, referrals physicians, pharmacists, and any other medical professional from 01 July 2016 through 31 July 2022. This includes electronic and paper documents that are available to you, whether or not you maintain paper copies, for example, records available through any electronic platform such as MyChart for David B. Cole[.]

Dkt. 2-8.

Cole moved to quash both subpoenas. Dkt. 10. In response, USCG withdrew its first subpoena. Dkt. 11 at 1 n.1.

Cole argues that the second subpoena violates the Fourth Amendment because it is overbroad and unduly burdensome. Dkt. 10 at 7. He asserts it is overbroad because the

ORDER - 4

six-year period goes "far beyond" the time relevant to the accident and seeks medical records "regardless of whether there is any potential of a connection to the accident." *Id*. He argues it is "unduly burdensome, not because of cost or time involved, but because of [its] burden on [his] right to maintain the privacy of his medical information, absent some sufficiently countervailing need." *Id*. at 7–8.

The Government responds that both the content and timeframe of the at-issue subpoena are reasonable under the Fourth Amendment, and that Cole has not met his high burden to quash a valid administrative subpoena. Dkt. 11 at 5. It asserts the six-year time frame is calculated to track with Cole's most recent five-year pilot credential renewal period. *Id*. at 10. It argues the medical information sought is not an undue burden on Cole's privacy, but rather serves two sufficient countervailing needs: (1) to determine if a medical condition contributed to the accident; and (2) to determine whether its merchant mariner credentialing process should be modified if it failed to detect a medical condition that contributed to the accident. Dkt. 11 at 5. *Id*.

## II.  DISCUSSION

A district court's inquiry in an agency subpoena enforcement is "quite narrow." *E.E.O.C. v. Children's Hosp. Med. Ctr. of N. California*, 719 F.2d 1426, 1428 (9th Cir. 1983), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). The critical questions are: "(1) whether Congress has granted authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *Id*. Courts enforce administrative subpoenas unless "the evidence sought by the subpoena [is] 'plainly incompetent or

irrelevant' to 'any lawful purpose' of the agency." *Fed. Mar. Comm'n v. Port of Seattle,* 521 F.2d 431, 433 (9th Cir.1975) (quoting *Endicott Johnson,* 317 U.S. 501, 509 (1943))

Administrative subpoenas must comport with the Fourth Amendment. An administrative subpoena "is sufficient [for Fourth Amendment purposes] if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115 (9th Cir. 2012) (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 652–53 (1950)). An administrative "subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Id*. (quoting *E.E.O.C. v. Children's Hosp. Med. Ctr. of N. California*, 719 F.2d 1426, 1428 (9th Cir. 1983), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir.1994)).

**A.    The subpoena satisfies the "critical questions" and is not overbroad or unduly burdensome under the Fourth Amendment**

Cole concedes that USCG's subpoena meets the first two "critical questions" for enforcement. USCG has the authority to investigate the accident, and he does not claim USCG failed to follow proper procedure. Dkt. 10 at 5.

Cole's stance on the third requirement, whether the evidence sought is relevant and material to the investigation, is more nuanced. His qualm with the second subpoena is primarily that its six-year reach is overbroad. He implies that he would turn over the records if it was limited to the 12 months preceding the accident: "This would be quite a different situation had the Government asked Mr. Cole to provide any additional medical

information that may exist for the year preceding the accident, which would be reasonably relevant and circumscribed." Dkt. 10 at 6.

But Cole also argues that the subpoena's request for *all* medical records "regardless of whether there is any potential of a connection to the accident" is unduly burdensome. *Id*. at 7. In short, Cole concedes that the subpoena seeks at least some relevant information, and asserts it would be "reasonably relevant and circumscribed" if limited to the 12 months preceding the accident (July 22, 2021–July 22, 2022). But he argues that the relevance of the medical records wanes and is ultimately outweighed by privacy interests for the five years preceding that (July 1, 2016–July 21, 2021).

The Court need only resolve two issues: whether the subpoena seeks evidence "relevant and material" to USCG's investigation and, if so, whether it complies with the Fourth Amendment. In other words, if the subpoena seeks evidence relevant and material to the investigation and is not overbroad or unduly burdensome, it is enforceable. The subpoena meets those requirements.

The medical records that the subpoena seeks are relevant and material to USCG's investigation. USCG seeks Cole's medical records to determine if a medical condition potentially contributed to the accident, and, if so, to evaluate whether its merchant mariner credentialing process should be modified to detect such conditions in the future. Dkt. 11 at 5. An administrative subpoena should be enforced unless "the evidence sought by the subpoena [is] plainly incompetent or irrelevant to any lawful purpose of the agency." 521 F.2d at 433 (internal quotations omitted).

There has been no such showing here. The evidence is plainly competent and relevant to USCG's lawful purpose. It is true that USCG already has Cole's annual physicals and five-year pilot renewal records, Dkt. 10 at 4, but Cole does not rebut the Government's contention merchant mariners sometimes use multiple physicians "in order to avoid detecting medical conditions that would preclude the issuance of a credential being identified during renewal and pilot physicals." Dkt. 2 at 7. USCG's request for medical records beyond those has is not unreasonable. The Government also argues persuasively that Cole's offer to provide medical records for the 12 months preceding the accident is a tacit concession that those records are relevant and material to USCG's investigation. Dkt. 11 at 8.

The subpoena is not overbroad or unduly burdensome under the Fourth Amendment. The six-year period is not overbroad because it is reasonably calculated to cover Cole's most recent pilot five year-credential renewal. This period is directly connected to USCG's goal of discerning whether it needs to make changes to its five-year pilot credential medical review to ensure it does not miss relevant medical conditions. Dkt. 11 at 9. The Government's argues that a relevant condition could have been "diagnosed in prior years and that treatment was not pursued or reflected in the immediate year [before the accident]." Cole does not respond to this argument, and does not explain why medical records from only the 12 months before the accident could contain relevant medical conditions. *Id.* at 9.

The Court is sympathetic to Cole's arguments regarding the unique privacy interests for medical records, but providing that information is not unduly burdensome

here. The Government argues persuasively that Cole's privacy interest in certain medical information for the entire subpoena period is diminished, because he was required to disclose it to USCG in order to obtain MMC credentials. Dkt. 11 at 12. Nor has Cole identified any medical information that is not relevant to USCG's stated needs. If such a record exists, Cole can take that matter up with USCG on an individualized basis. On balance however, an administrative subpoena "is sufficient [for Fourth Amendment purposes] if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Golden Valley*, 689 F.3d at 1115. The medical records sought by the subpoena are sufficiently "definite" and are reasonably relevant to USCG's goals of discerning whether Cole had an underlying medical condition that contributed to the accident and USCG pilot credentialing process failed to catch.

For these reasons, Cole's motion to quash USCG's second subpoena, Dkt. 10, is **DENIED**, and the Government's motion to enforce that subpoena, Dkt. 1, is **GRANTED**.

The parties shall jointly inform the Court of any next steps in this case, or whether it can be closed, within 14 days.

**IT IS SO ORDERED**.

Dated this 17th day of May, 2024.

BENJAMIN H. SETTLE
United States District Judge